461 So.2d 1162 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Erma RING, Defendant-Appellant.
No. CR84-468.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
Rehearing Denied January 17, 1985.
Writ Denied March 22, 1985.
*1163 Bertrand Deblanc, Sr., Linda Veazey, Abbeville, for defendant-appellant.
Louis G. Garrot, Asst. Dist. Atty., Abbeville, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Defendant, Erma Ring, was indicted by a grand jury for second degree murder in violation of LSA-R.S. 14:30.1. She was tried by a twelve-member jury and found guilty. The trial judge sentenced her to life imprisonment at hard labor without benefit of parole or probation. Defendant appeals her conviction and sentence by raising five (5) assignments of error. We affirm.

FACTS
On March 28, 1982, the St. Martin Parish Sheriff's Office removed a corpse from a body of water running underneath the interstate bridge in St. Martin Parish. At trial, counsel stipulated that the body was that of Carlon Ring. He had been shot twice, once in the thigh and once in the chest. The cause of death was the piercing of the heart by a bullet.
On March 24, 1983, the grand jury returned an indictment against Erma Ring for the second degree murder of her husband, Carlon Ring. At trial, Howard Bailey testified that in March of 1982, he and Mrs. Ring's son, Rayford McMillan (Sonny), were living in Vermilion Parish on a sailboat owned by Carlon Ring. He further *1164 testified that on March 19, 1982, Erma Ring arrived at his residence and claimed that she had shot Carl. Bailey then stated that he and Sonny went to the Rings' trailer and found Carl's body in the front yard, wrapped it in a tarpaulin, and threw it over a bridge into a stream. According to Bailey, the three devised a story to explain Carl's disappearance.
Rayford McMillan (Sonny) testified that he had no knowledge of the circumstances surrounding his stepfather's death.
Paulette Rawdon and Norman Fred, friends of the Rings, testified that on March 20 and 21 of 1982, Erma told them that Carl had left on a motorcycle with another woman. Mrs. Rawdon also stated that in February of 1983, Howard Bailey confessed to her his knowledge of the events concerning Carl's death.
Karen and Richard LeDoux, who met Erma in October of 1982, testified that she repeatedly told them that she had killed her husband in her front yard during a barbecue in the presence of Bailey and Sonny, and that they had "dumped him in a river." Since the LeDouxs were concerned about this story, they called Mrs. Rawdon who informed them that Carl had been missing.
Two deputies with the Vermilion Parish Sheriff's Department stated that in March and April of 1982, they had received calls from Mrs. Ring informing them of her husband's disappearance.
Defendant, Erma Ring, was indicted by a grand jury for second degree murder. On July 20, 1983, she pled not guilty at arraignment. She was tried before a twelvemember jury on January 24-26, 1984 and found guilty as charged. The trial judge sentenced her to life imprisonment at hard labor without benefit of probation or parole. Defendant appeals, urging five (5) assignments of error.

ASSIGNMENT # 1: SPEEDY TRIAL
Defendant contends that the trial court erred in denying the defendant's motion to quash in violation of LSA-C.Cr.P. art. 701, and in violation of the defendant's constitutional right to a speedy trial. LSA-C.Cr.P. art. 701 provides in pertinent part:
"D. After the filing of a motion for a speedy trial by the defendant, the time period for commencement of trial shall be as follows:
(1) The trial of a defendant charged with a felony shall commence within one hundred twenty days if he is continued in custody and within one hundred eighty days if he is not continued in custody.
(2) The trial of a defendant charged with a misdemeanor shall commence within thirty days if he is continued in custody and within sixty days if he is not continued in custody. Failure to commence trial within the time periods provided above shall result in the release of the defendant without bail or in the discharge of the bail obligation, if after contradictory hearing with the district attorney, just cause for the delay is not shown.
E. `Just cause' as used in this Article shall include any grounds beyond the control of the State or the Court."
On March 24, 1983, defendant was indicted. On July 8, 1983, defendant filed a motion for speedy trial. On July 20, 1983, defendant was formally arraigned and entered a plea of not guilty. On October 18, 1983, the state moved for a continuance on the basis of the absence of a key witness. The court granted the continuance but ruled that the trial had to be held on January 24, 1984. On January 4, 1984, the defendant filed a motion to quash which was denied. The trial was held on January 24, 1984.
In analyzing an allegation of deprivation of the right to a speedy trial, the court will consider the following factors:
1) the length of and the reason for the delay;
2) the defendant's assertion of the right; and,
3) the prejudice which the defendant has suffered.
Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972).
*1165 In State v. Reaves, 376 So.2d 136 (La.1979), a three and one-half (3½) month delay was found unreasonable because the state did not give reasons for the continuances. In State v. Smith, 357 So.2d 798 (La.1978), a twenty (20) month delay between arrest and indictment was considered reasonable because the state acted in good faith. In this instance, the nine (9) month delay between the indictment and trial was due to the state's search for a key witness and was therefore reasonable. We find that the state's delay for this purpose was for just cause in this limited instance. The defendant did assert her right. She filed a motion for speedy trial before she filed the motion to quash. However, the defendant does not appear to have suffered any prejudice. Regardless of the trial date, defendant could not have been released from custody prior to January 24, 1984 because she was being held in custody for an additional forgery charge. Although the trial did not transpire within one hundred and twenty (120) days of the filing of the motion for speedy trial pursuant to LSA-C.Cr.P. art. 701, the defendant was not denied a right to a speedy trial. The trial court did not err in denying the motion to quash. This assignment of error is without merit.

ASSIGNMENT # 2: VENUE
Defendant contends that the trial court erred in finding that the crime was committed in Vermilion Parish since the victim's body was found in St. Martin Parish. The state relied upon one witness who testified that the victim was shot in Vermilion Parish and then transported to St. Martin Parish. However, defendant argues that there was no evidence proving the location of the actual shooting.
All trials must take place in the parish where the offense occurred. Louisiana Constitution Article I, section 16; LSA-C.Cr.P. art. 611. While the state is required to prove venue beyond a reasonable doubt at trial, LSA-C.Cr.P. art. 615, the appellate review of the factual question of venue is limited to whether the state submitted some evidence of proper venue. State v. Skipper, 387 So.2d 592 (La. 1980).
Our review of the record reveals that the state submitted sufficient evidence. Howard Bailey testified that after defendant informed him of shooting her husband at their residence located in Vermilion Parish, he drove there and found Mr. Ring's body in the front yard. Karen and Richard LeDoux testified that the defendant told them that she shot her husband in the front yard of her home in Vermilion Parish. Even construing this evidence in a light most favorable to the defendant, we find that a reasonable trier of fact could conclude beyond a reasonable doubt that the victim was shot in Vermilion Parish.
The record, therefore, shows that evidence of proper venue was submitted by the state. This assignment of error is without merit.

ASSIGNMENT # 3: SPECIFIC INTENT
Defendant claims that the trial court erred in denying a judgment of acquittal or in failing to grant a new trial because the verdict was contrary to the law and evidence in that the state did not present evidence showing a specific intent of the alleged crime of second degree murder. LSA-R.S. 14:30.1 defines second degree murder, in pertinent part, as follows:
"the killing of a human being:
(1) When the offender has a specific intent to kill or inflict great bodily harm."
In connection with this, LSA-R.S. 14:10 defines specific intent as follows:
"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent, however, is a state of mind which need not be proven as a fact but which may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Holmes, 388 *1166 So.2d 722 (La.1980); State v. Williams, 383 So.2d 369 (La.1980); State v. Boyer, 406 So.2d 143 (La.1981). LSA-R.S. 15:438 provides:
"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
Our review of the record indicates that there was sufficient evidence presented at trial which excluded every reasonable hypothesis of innocence, and that it was sufficient to prove that Erma Ring did shoot Carlon Ring. It is strongly inferred from the circumstances and nature of the killing that the defendant intended to kill or inflict great bodily harm to the victim. The victim was shot twice, once in the chest and once in the thigh. The cause of death was the shot in the chest. Howard Bailey testified that the defendant told him she shot Carl Ring when Carl announced that he was on his way to shoot her son, Sonny. Bailey further testified that he, the defendant, and Sonny devised a plan to explain Carlon Ring's absence.
The defendant's son, Sonny (Rayford McMillan), testified that he knew nothing about his stepfather's death. However, the jury assigned greater credibility to Bailey's version of the facts than to Sonny's version. When there is conflicting testimony as to a factual matter, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. Its factual determination will not be disturbed unless clearly contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981).
After review of the evidence presented, we find a strong inference that Erma Ring had the required specific intent to commit second degree murder. This assignment is without merit.

ASSIGNMENT #4: ABANDONED ASSIGNMENTS
Although this assignment of error was filed in the trial court, it was not briefed and is therefore considered as abandoned. State v. Fruge, 438 So.2d 1337 (La.App. 3d Cir.1983); State v. Lewis, 416 So.2d 921 (La.1982). For this reason, it lacks merit on appeal.

ASSIGNMENT #5: DEFENDANT'S UNCORROBORATED CONFESSION AS A BASIS FOR CONVICTION
Defendant contends that the trial court erred in denying her motion for acquittal and in failing to grant a new trial since the conviction was based on the defendant's uncorroborated confession.
It is well-settled that an accused party cannot be legally convicted on the basis of his own uncorroborated confession without proof that a crime has been committed by someone, that is, without proof of the corpus delicti. State v. Simmons, 443 So.2d 512 (La.1983); State v. Reed, 420 So.2d 950 (La.1982); State v. Freetime, 334 So.2d 207 (La.1976). In this case, both the state and the defendant stipulated that Carlon Ring was dead and that the death was due to one of two shots by a .38 caliber weapon. Since there is no evidence of suicide, it appears that his death was caused by someone's conduct. The corpus delicti was therefore established by evidence independent of the defendant's confession. Accordingly, this assignment of error is without merit.
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.